IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE TOHONO O'ODHAM NATION, | ) | |
| Plaintiff, | ) | Case No. 06-944L |
| | ) | Judge Eric C. Bruggink |
| v. | ) | **Electronically filed**: 7/11/07 |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS**

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Tohono O'Odham Nation

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. STATEMENT OF THE CASE ........ 3

III. ARGUMENT ........ 5

A. Dismissal Under 28 U.S.C. § 1500 Is Improper Unless The CFC And District Court Complaints Both Arise From The "Same Operative Facts" And Seek The "Same Relief." ........ 5

B. Plaintiff-Beneficiary's Claim In The District Court For An Equitable Accounting Arises From A Different Breach Of Trust And Different Operative Facts From Its Claims In The CFC For Mismanagement Of Plaintiff-Beneficiary's Trust Property. ........ 8

1. "Operative facts" under 28 U.S.C. § 1500 do not include background facts. .... 8

2. The District Court and CFC Complaints do not present the same operative facts. ........ 10

3. The government's argument misunderstands the law and mischaracterizes the Complaints. ........ 11

C. Plaintiff-Beneficiary Seeks Different Relief In The District Court Than It Does In The CFC – Equitable Relief In The Former And Money Damages In The Latter – In Accord With Each Court's Jurisdiction. ........ 13

1. Section 1500 does not apply where the pending Complaints seek different relief. ........ 13

2. Plaintiff-Beneficiary does not seek the same relief in the two cases. ........ 15

3. The government's arguments to the contrary are without merit. ........ 19

IV. CONCLUSION ........ 30

CERTIFICATE OF SERVICE ........ 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska Airlines, Inc. v. Johnson*,
8 F.3d 791 (Fed. Cir. 1993) ........ 23

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ........ 2, 22, 23

*Branch v. United States*,
29 Fed. Cl. 606 (1993) ........ 9

*Casman v. United States*,
135 Ct. Cl. 647 (1956) ........ 13

*Cherokee Nation of Okla. v. United States*,
21 Cl. Ct. 565 (1990) ........ 15

*Cobell v. Babbitt*,
30 F. Supp. 2d 24 (D.D.C. 1998) ........ 23, 25

*Cobell v. Babbitt*,
91 F. Supp. 2d 1 (D.D.C. 1999) ........ 24

*Cobell v. Norton*¸
240 F.3d 1081 (D.C. Cir. 2001) ........ passim

*Cooke v. United States*,
No. 06-748C, 2007 WL 1893177 (Fed. Cl. June 28, 2007) ........ passim

*Crocker v. Piedmont Aviation, Inc.*,
49 F.3d 735 (D.C. Cir. 1995) ........ 23

*Fire-Trol Holdings, LLC v. United States*,
65 Fed. Cl. 32 (2005) ........ 6, 9

*Harbuck v. United States*,
378 F.3d 1324 (Fed. Cir. 2004) ........ 6, 19, 20

*Heritage Minerals, Inc. v. United States*,
71 Fed. Cl. 710 (2006) ........ 9

*Johns-Manville Corp. v. United States*,
855 F.2d 1556 (Fed. Cir. 1988) ........ 6, 7, 13

*Keene Corp. v. United States*,
508 U.S. 200 (1993) ........ 6, 7, 13, 19

*Kidwell v. Dep't of Army*,
56 F.3d 279 (D.C. Cir. 1995) ........ 17, 19

*Klamath & Modoc Tribes & Yashookin Bank of Snake Indians v. United States*,
174 Ct. Cl. 483 (1966) .......... 14, 15

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .......... 22

*Loveladies Harbor v. United States*,
27 F.3d 1545 (Fed. Cir. 1994) .......... passim

*Lucas v. United States*,
25 Cl. Ct. 298 (1992) .......... 10

*Manke Lumber Co. v. United States*,
44 Fed. Cl. 219 (1999) .......... 6, 7

*Osage Nation v. United States*,
57 Fed. Cl. 392 (2003) .......... 14

*Osage Tribe of Indians of Okla. v. United States*,
No. 04-0283, 2005 WL 578171 (D.D.C. Mar. 9, 2005) .......... 24

*OSI, Inc. v. United States*,
73 Fed. Cl. 39 (2006) .......... 21

*Poafpybitty v. Skelly Oil Co.*,
390 U.S. 365 (1968) .......... 18

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946) .......... 24

*Rainbolt v. Johnson*,
669 F.2d 767 (D.C. Cir. 1981) .......... 24

*SEC v. First City Financial Corp.*,
890 F.2d 1215 (D.C. Cir. 1989) .......... 23

*Tootle v. Sec'y of Navy*,
446 F.3d 167 (D.C. Cir. 2006) .......... 17

*United States v. Minor*,
228 F.3d 352 (4th Cir. 2000) .......... 23

*United States v. Mitchell (Mitchell II)*,
463 U.S. 206 (1983) .......... 5, 14, 26

*Williams v. United States*,
71 Fed. Cl. 194 (2006) .......... 9

**Statutes**

25 U.S.C. § 4011(a) .......... 16

25 U.S.C. § 4022 .......... 18

28 U.S.C. § 1500 .......... passim



US2000 10072996.7

**Other Authorities**

2A A. Scott & W. Fratcher, *The Law of Trusts* § 172 (4th ed. 1987) .......... 16

Abandoned Property Collection Act, ch. 120, 12 Stat. 820 (1863) .......... 7

D. Dobbs, *Handbook on the Law of Remedies* 135 (1973) .......... 23

D. Dobbs, *Law of Remedies* § 4.1(2) .......... 24

G. Bogert, et al., *The Law of Trusts & Trustees* § 962 (2d ed. 2006) .......... 24

G. Bogert, et al., *The Law of Trusts & Trustees* § 963 (2d ed. 2006) .......... 16, 17

*Restatement (Second) of Agency* § 399 .......... 17

**Rules**

25 C.F.R. § 162.616 .......... 18

25 C.F.R. § 162.619 .......... 18

RCFC 12(b)(1) .......... 1

# I. **INTRODUCTION**

This is an action for money damages against the United States, brought to redress gross breaches of trust by the United States and its representatives as trustees and trustee-delegates of land, mineral resources, and other assets held by them for the benefit of the Tohono O'odham Nation ("Plaintiff-Beneficiary"). The government has moved to dismiss the action for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and 28 U.S.C. § 1500 on the ground that Plaintiff-Beneficiary's separate action for an equitable accounting pending in the United States District Court for the District of Columbia is the same claim that it seeks to vindicate here. As the Federal Circuit has made clear, however, "to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the ***same operative facts***, and must seek ***the same relief***." *Loveladies Harbor v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (*en banc*) (emphases in original). Both requirements must be satisfied, and here neither is met.

First, Plaintiff-Beneficiary's claim in the District Court arises from different operative facts involving the breach of a different trust duty from its claims in this Court. In the District Court, Plaintiff-Beneficiary seeks to compel the government to provide a complete, accurate, and adequate accounting of all of the property it holds in trust for the benefit of Plaintiff-Beneficiary. The operative facts necessary to establish the breach of that trust obligation include decades of inaction on the part of the United States in the fulfillment of this core duty and the government's failure to maintain adequate records of these trust assets so that Plaintiff-Beneficiary can ascertain the true state of its assets. In this Court, by contrast, Plaintiff-Beneficiary will prove distinct breaches of trust in the management of Plaintiff-Beneficiary's trust funds and non-monetary trust assets. The operative facts include, for example, loss of investment funds as a



US2000 10072996.7

result of the United States' breach of its fiduciary duty to maximize trust income by prudent investment and the failure of the United States to obtain fair and reasonable compensation for the use of Plaintiff-Beneficiary's land and other non-monetary assets. To be sure, certain background facts will overlap because the breaches of duty to be proved in both courts arise from the trust relationship between the United States and Plaintiff-Beneficiary, but an overlap in such background facts does not render the two claims the "same" for purposes of § 1500. *See, e.g.*, *Cooke v. United States*, No. 06-748C, 2007 WL 1893177, at *3-5 (Fed. Cl. June 28, 2007). Thus, the facts material to the claims in the two courts are not the same.

In addition, § 1500 does not apply for the independent reason that Plaintiff-Beneficiary does not seek the same relief in both courts. Simply put, it seeks strictly equitable relief in the District Court and money damages here. In the District Court, Plaintiff-Beneficiary asks for the equitable remedies available in that court for the breach of a duty to account – an order directing the government to provide that accounting and other appropriate equitable relief, including restatement of Plaintiff-Beneficiary's accounts to reflect the results of that accounting. It does not, however, request money damages to compensate Plaintiff-Beneficiary for losses resulting from imprudent investment or mismanagement of Plaintiff-Beneficiary's trust assets. The latter form of relief is only requested (and is only available) in this Court.

In particular, contrary to the government's position, the restitution and disgorgement sought in the District Court does not overlap with the money damages requested in this Court. It is well-settled that equitable restitution is not the same as money damages and that in any event, § 1500 does not apply when two claims seek different measures and amounts of monetary relief. *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988); *Cooke*, 2007 WL 1893177, at *5. The government also contends Plaintiff-Beneficiary seeks overlapping declaratory relief, but this

argument rests both on a misreading of the Prayer for Relief in this Court and the allegations in the District Court Complaint and on the erroneous legal premise that a liability determination is a form of relief.

Accordingly, § 1500 is not a bar to Plaintiff-Beneficiary's claims because its claim in the District Court neither arises from the same operative facts nor involves the same relief it seeks here. For this reason, the government's motion to dismiss should be denied.

## II. STATEMENT OF THE CASE

On December 28 and 29, 2006, Plaintiff-Beneficiary filed two different complaints – one in the District Court for the District of Columbia against the Secretaries of the Interior and the Treasury and the Special Trustee for American Indians (the "District Court Complaint"), and a second in this Court against the United States (the "CFC Complaint"). Although both complaints arise from the trust relationship between Plaintiff-Beneficiary and the United States and the failure of the United States to fulfill various trust obligations, the two complaints allege different claims involving different operatives facts, for different breaches of trust, and seeking different relief.

The District Court Complaint, dated December 28, 2006, invokes the equitable jurisdiction of the District Court to request a complete, accurate, and adequate accounting of *all* property held in trust by the United States for Plaintiff-Beneficiary's benefit. *See* District Ct. Compl. ¶ 1, attached as Ex. 1 to Def.'s Mot. to Dismiss; *Cobell v. Norton (Cobell VI)*¸ 240 F.3d 1081, 1103 (D.C. Cir. 2001) (the accounting obligation requires, *inter alia,* an accounting report that "contain[s] sufficient information for the [Nation] readily to ascertain whether the trust has been faithfully carried out.") (citation omitted). The United States' repeated breaches of its fiduciary obligations with respect to Indian trust assets, now widely recognized by the courts and

the Congress, make an accounting necessary to ascertain the true state of Plaintiff-Beneficiary's trust assets. (District Ct. Compl. ¶ 21.)

In Count One of the District Court Complaint, Plaintiff-Beneficiary requests a declaration (1) that the United States and its trustee-delegates owe a fiduciary duty to provide a complete and accurate accounting of all funds and assets, and (2) that the defendants are in violation of their duty. (*Id.* at ¶¶ 34-39; Prayer ¶¶ 1-4.) In Count Two of the District Court Complaint, Plaintiff-Beneficiary requests injunctive relief directing the defendants to provide such an accounting and to comply with their other fiduciary duties as determined by that Court. (*Id.* at ¶¶ 40-42; Prayer ¶ 5.) Further, to the extent that the accounting demonstrates errors in the account balances (whether positive or negative), Plaintiff-Beneficiary seeks a decree directing the restatement and correction of Plaintiff-Beneficiary's trust account balances to reflect the results of the accounting. (*Id.* at ¶¶ 1, 43; Prayer ¶ 6.) Finally, the accounting may well reveal that other equitable relief is appropriate to compel the government to comply with its trust obligations in the present or in the future. (*Id.* at ¶ 43-44; Prayer ¶¶ 5-6.)

The equitable relief Plaintiff-Beneficiary seeks in the District Court is designed to address the government's trust obligations to account for Plaintiff-Beneficiary's trust assets, but it cannot remedy the past breaches of duty prudently to invest money held in trust funds or to obtain the highest and best use for Plaintiff-Beneficiary's land or other trust assets. Establishing the breach of those latter duties involves different operative facts and leads to only one remedy: money damages.

Therefore, on December 29, 2006, Plaintiff-Beneficiary filed a Complaint for money damages in this Court to redress specific breaches of statutory, regulatory, and fiduciary duties in the management of Plaintiff-Beneficiary's trust funds and non-monetary trust assets. These

duties, as the Supreme Court has recognized, are "money-mandating" and their breach may be remedied by an award of money damages in the Court of Federal Claims. *See United States v. Mitchell (Mitchell II)*, 463 U.S. 206, 228 (1983).

The CFC Complaint alleges four distinct breach-of-trust claims for mismanagement of different tribal funds and assets. Specifically, Count I alleges mismanagement of Plaintiff-Beneficiary's natural resources, including mineral rights on its land, for failure to obtain "fair and reasonable compensation" for the lease of these resources. (CFC Compl. ¶¶ 25-30.) Count II alleges similar mismanagement of Plaintiff-Beneficiary's non-mineral interests in its trust land, including easements, rights-of-way, and land and building leases. (*Id.* at ¶¶ 31-35.) Count III alleges mismanagement and failure prudently to invest the principal and earnings of judgment funds held in trust for Plaintiff-Beneficiary. (*Id.* at ¶¶ 36-40.) Finally, Count IV alleges mismanagement and failure prudently to invest the principal and earnings of other funds held in trust for Plaintiff-Beneficiary, including proceeds from leases, permits, easements, and rights-of-way; judgment funds; general tribal funds; and "Indian Moneys Proceeds of Labor" (IMPL) funds. (*Id.* at ¶¶ 41-45.) For all four counts, the only relief requested, and the only relief adequate to redress the trust breaches, is an award of money damages. Prayer ¶¶ 1-4.

## III. ARGUMENT

### A. Dismissal Under 28 U.S.C. § 1500 Is Improper Unless The CFC And District Court Complaints Both Arise From The "Same Operative Facts" And Seek The "Same Relief."

Section 1500 of Title 28 provides that the Court of Federal Claims shall not have jurisdiction "of any claim for or in respect to which the plaintiff … has pending in any other court any suit … against the United States." 28 U.S.C. § 1500. The purpose of the jurisdictional rule is to "prohibit the filing and prosecution of the *same claims* against the United States in two

courts at the same time." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1562 (Fed. Cir. 1988) (emphasis added). Since the Federal Circuit's *en banc* decision in *Loveladies*, it has been well-settled that the two actions do not present the "same claim" unless they both (1) arise from the same operative facts and (2) seek the same relief. *See Loveladies*, 27 F.3d at 1551 ("For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from ***the same operative facts***, and must seek ***the same relief***." (emphasis in original)).[1] "If either is missing, § 1500 does not apply." *Manke Lumber Co. v.*

[1] The government tries to dilute the standard in *Loveladies*, although the distinction does not ultimately matter here because Plaintiff-Beneficiary prevails under either standard. The government argues it is sufficient for dismissal if the operative facts in the two complaints are "***substantially*** the same" and if the relief sought is "merely the same in ***nature***." *See* Def. Mot. to Dismiss at 5 (emphases added). For the first point, the government cites the Supreme Court's decision in *Keene Corp. v. United States*, 508 U.S. 200, 212-214 (1993). In *Keene*, the Supreme Court, interpreting the predecessor to § 1500, said that the comparison of two suits turned upon whether the plaintiff's other suit was based on "substantially the same operative facts." *Id.* at 201. As this Court observed in *Manke Lumber*, however, the Federal Circuit in *Loveladies* has since worded the applicable standard under § 1500 differently, requiring the "same operative facts." *See* 44 Fed. Cl. at 222 ("The Supreme Court in *Keene* used different phraseology to discuss dismissal under § 1500 than that employed by the Federal Circuit in *Loveladies*."). And this court is "governed by the Federal Circuit's explication of *Keene* [in *Loveladies*] which developed it into a two prong test." *Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32, 34 (2005).

In support of the second part of the government's test, *i.e.*, that the relief sought must simply be the same in "nature," the government cites *Harbuck v. United States*, 378 F.3d 1324, 1329 (Fed. Cir. 2004). That case explicitly reaffirms the requirement that both claims must "seek the same relief" and nowhere suggests that relief that is "merely the same in nature" is enough. As discussed further below, the court did say that dismissal is appropriate where there is some "overlap" in the relief requested, *id.*, but this requirement is not met by relief that is simply overlapping in ***nature*** (*e.g.*, all claims for money damages). *See Cooke v. United States*, 2007 WL 1893177, at *5 ("the inclusion of similar relief in the two complaints does not always mandate the application of section 1500"). Instead, the rule against overlapping relief applies where exactly the same relief is requested in both courts, and that remains true even though other and different relief is also requested. *See id.* ("[T]he 'inclusion of other and different requested relief in the two complaints does not preclude the application of section 1500 . . . ."). However, where, as here, exactly the same relief is not requested in both courts, § 1500 does not apply.

*United States*, 44 Fed. Cl. 219, 222 (1999) (Bruggink, J.). Here, both requirements are missing and, therefore, dismissal under 28 U.S.C. § 1500 is improper.

In interpreting § 1500, the Federal Circuit has warned that the jurisdictional bar must be construed narrowly to avoid dismissal of non-duplicative suits and to guarantee that litigants have an opportunity to vindicate all of their claims rather than being forced to forgo some claims in favor of others. In *Loveladies*, the Federal Circuit stated:

> Because this nation relies in significant degree on litigation to control the excesses to which Government may from time to time be prone, it would not be sound policy to force plaintiffs to forego monetary claims in order to challenge the validity of Government action, or to preclude challenges to the validity of Government action in order to protect a Constitutional claim for compensation.

27 F.3d at 1555-56. As the *en banc* court noted, "Section 1500 was enacted to preclude duplicate [claims in the aftermath of the Civil War for private property (usually cotton) confiscated from residents of the Confederacy] – claims for money damages – at a time when *res judicata* principles did not provide the Government with protection against such 'duplicative lawsuits.'" *Id.* at 1556 (emphasis deleted) (quoting *Keene*, 508 U.S. at 206).[2] Recognizing that § 1500 has long outlived the narrow purpose for which it was enacted, the *en banc* court cautioned that "[w]hatever viability remains in § 1500, absent a clear expression of Congressional intent we ought not extend the statute to allow the Government to foreclose non-duplicative suits, and to deny remedies the Constitution and statutes otherwise provide." *Id.* Applying this principle here, § 1500 should not be extended to foreclose Plaintiff-Beneficiary's statutory right to money

[2] The Supreme Court in *Keene* described the history of this statute, which has "long outlived" the duplicative claims it was designed to prevent. *See* 508 U.S. at 206; *see also Johns-Manville Corp.*, 855 F.2d at 1569. (summarizing legislative history). As described there, some of those with property confiscated during the Civil War brought statutory claims against the United States in the Court of Claims for compensation under the Abandoned Property Collection Act, ch. 120, 12 Stat. 820 (1863), as well as suits against their local treasury officials on various tort theories of recovery, that were removed to federal district court. *Keene*, 508 U.S. at 206. Section 1500 was enacted to curb these duplicative suits and to prevent a claimant's second bite at the apple.

damages arising from breaches of money-mandating duties merely because it also seeks in the District Court the separate relief of an equitable accounting based upon different operative facts and involving different trust duties.

### B. Plaintiff-Beneficiary's Claim In The District Court For An Equitable Accounting Arises From A Different Breach Of Trust And Different Operative Facts From Its Claims In The CFC For Mismanagement Of Plaintiff-Beneficiary's Trust Property.

Plaintiff-Beneficiary's claim for a full and complete accounting of its trust assets and other equitable relief in the District Court arises from the government's failure over more than a century ***ever*** to comply with its trust duty to provide an accounting for all assets held in trust for Plaintiff-Beneficiary. That case seeks to compel the government to comply with a different trust duty, and therefore naturally is based upon different operative facts, than Plaintiff-Beneficiary's claims in this Court for money damages for past mismanagement and failure to deposit and invest its trust assets.

#### 1. "Operative facts" under 28 U.S.C. § 1500 do not include background facts.

As the *en banc* court recognized in *Loveladies*, "operative facts" do not include every fact alleged in a complaint, but instead require some link between the facts and the elements of the claim to be proved:

> Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is 'operative' – *i.e.*, relevant to a judicially imposed remedy – it is necessarily associated with an underlying legal theory, that is, the cause of action. For example, without legal underpinning, words in a contract are no different from casual correspondence.

27 F.3d at 1551 n.17. Because it was not critical to the decision in that case, the Federal Circuit concluded it was unnecessary to "further refine the meaning of 'operative facts.'" *Id.*

As this Court has repeatedly recognized, "[c]laims involving the same general factual circumstances but distinct material facts can fail to trigger section 1500." *Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006) (quoting *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993)). "[W]hile claims 'may be supported by some common operative facts,' § 1500 is not implicated where 'the material facts supporting each claim [are] characterized as largely dissimilar.'" *Id.* Thus, the "fact that two claims share the same factual background is insufficient to divest this Court of jurisdiction when there is a material difference between the operative facts relevant to each claim." *Cooke v. United States*, 2007 WL 1893177, at *5; *see also Fire-Trol*, 65 Fed. Cl. at 34 (facts that are "merely background" are "not operative facts directly giving rise to the claims pled").

Under this legal standard, this Court has repeatedly and consistently concluded that claims involving similar background facts, but different operative facts, did not implicate § 1500's bar. *See, e.g.*, *Cooke*, 2007 WL 1893177, at *3-5 (Equal Pay Act claim in district court did not involve same operative facts as retaliation claim in Court of Federal Claims despite that claims shared the same factual background); *Fire-Trol*, 65 Fed. Cl. at 34-35 (agreeing with plaintiff's characterization of facts relevant to an understanding of the wildland fire retardant market as "merely background"); *Heritage Minerals*, 71 Fed. Cl. at 715 (operative facts underlying district court action for contamination of groundwater did not arise from same operative facts as takings claim arising from subsequent installation of wells to monitor contamination of groundwater); *Williams v. United States*, 71 Fed. Cl. 194, 199-200 (2006) (even though "[m]any of the factual allegations … match[ed]," collateral attack on court martial proceeding in district court arose from different operative facts than claim for accrued leave denied as a result of his dishonorable discharge and correction of his military record); *Branch*, 29

Fed. Cl. at 608; *Lucas v. United States*, 25 Cl. Ct. 298, 305 (1992) (breach of contract claims were supported by some common facts but material facts supporting claims arising from separate contracts were different). Plaintiff-Beneficiary's claims in this Court and the District Court involve different operative facts.

**2. The District Court and CFC Complaints do not present the same operative facts.**

The government contends that both complaints are based upon "essentially identical factual allegations" that the United States "as trustee, breached fiduciary duties owed to Plaintiff by allegedly failing to properly manage Tribal trust funds and assets." (Def. Mot. to Dismiss at 6.) That is not correct. Of course, there are similarities between the two complaints. But that is neither surprising nor legally germane: In each case it is the trust relationship between the United States as trustee and Plaintiff-Beneficiary that is at the center of Plaintiff-Beneficiary's claims and gives rise to the duties assertedly violated. But what is legally controlling is that the duties specifically at issue in each case, and the facts underlying the breaches of those duties, are different.

Fundamentally, the principal duty Plaintiff-Beneficiary seeks to enforce in the District Court is the government's obligation to provide a complete, accurate, and adequate accounting of all property held in trust by the United States for Plaintiff-Beneficiary's benefit – an obligation the United States, as trustee, has not fulfilled since the inception of the trust more than a century ago. (*See* District Ct. Compl. ¶¶ 34-39, 41-42; Prayer ¶¶ 1-3, 5.) The facts supporting the breach of the accounting obligation – decades of inaction on the part of the trustee-delegates with respect to fulfillment of this core duty – are different from the facts to be established in support of the distinct breach of trust claims alleging fund and asset mismanagement in the claims filed in this Court.

For example, assume *arguendo* (and in the government's favor) that the trustee-delegates in the accounting sought in the District Court action are able to account faithfully for every transaction related to Plaintiff-Beneficiary's judgment funds and other trust funds. Plaintiff-Beneficiary would nonetheless be entitled to substantial money damages in this Court (Counts III and IV) if the government's records, although accurate, reflect a failure to deposit or invest those same funds "with the care, skill, and caution that a prudent investor would exercise under the circumstances." (CFC Compl. ¶ 42; *see also id.* at ¶¶ 36-40) (breach in management of judgment funds). The facts presented in support of these claims would be different from the facts presented to support the equitable accounting claim in the District Court.

Similarly, Counts I and II of the CFC Complaint both refer to the United States' failure to obtain "fair and reasonable compensation" for the benefit of the Nation in leasing Plaintiff-Beneficiary's mineral and non-mineral assets. (CFC Compl. ¶¶ 25-35.) Even assuming that the Government has accurately maintained records of and accounted for this trust property, Plaintiff-Beneficiary still would have a claim for this separate breach of trust, and evidence of the United States' failure to obtain fair and reasonable compensation for the use of this land will require proof of different operative facts than the facts required in support of a general accounting.

**3. The government's argument misunderstands the law and mischaracterizes the Complaints.**

In support of its contention that the facts underlying these allegations are likely to be substantially similar in both cases, the United States points to background facts presented in both Complaints that describe the trust relationship between Plaintiff-Beneficiary and the United States, and the persistent and egregious pattern of the United States' failures to comply with its trust obligations. (*See* Def. Mot. To Dismiss at 6-9.) Although a full and accurate picture of this trust relationship is an important backdrop for the claims in both courts, the specific duties

Plaintiff-Beneficiary seeks to vindicate in each court, and the facts supporting the breaches of those duties, are different. As explained above, the common facts asserted by the government are legally insufficient to dismiss the complaint under § 1500.

Furthermore, the government mischaracterizes the factual allegations on the face of the Complaints. For example, the United States contends that Plaintiff-Beneficiary challenges the adequacy of the compensation it received for leases and permits for interests in its mineral rights not only in its claims for damages in this Court but also in the District Court. (*See* Def. Mot. to Dismiss at 8-9; *compare* CFC Compl. ¶¶ 25-30 (Count I), *with* District Ct. Compl. ¶¶ 1-4, 13, 20-21.) Plaintiff-Beneficiary's claim in the District Court, however, does not turn on specific failures to maximize the productivity of its trust property or to use it for its highest and best use. (*See* District Ct. Compl. ¶¶ 20(f)(1)(g)-21. Such breaches are the focus of the Court of Federal Claims Complaint and can only be remedied here where money damages are available. Accordingly, these allegations are simply relevant background for Plaintiff-Beneficiary's demand for a full accounting in the District Court because these repeated breaches make clear the need for the government to account for all of Plaintiff-Beneficiary's trust assets. Furthermore, without such an accounting, it is possible other breaches would go unnoticed. (*See Id.* at ¶ 21.) ("Due to these and other breaches of the fiduciary duties owed by the United States, the Nation does not know, and has no way of ascertaining, the true state of its trust assets").

In sum, the operative facts necessary to the claims filed in this court for money damages are different than the facts needed to complete and present the equitable accounting claim in the District Court. This reflects that the trust duties in the two cases are different – the accounting obligation and other duties at issue in the District Court are not the same trust duties as the

money-mandating duties that support Plaintiff-Beneficiary's four-count complaint here in the Court of Federal Claims.

### C. Plaintiff-Beneficiary Seeks Different Relief In The District Court Than It Does In The CFC – Equitable Relief In The Former And Money Damages In The Latter – In Accord With Each Court's Jurisdiction.

Even if, contrary to the foregoing, the District Court and Court of Federal Claims actions are deemed to involve the same operative facts, the suits still seek "distinctly different types of relief in the two courts." *Loveladies*, 27 F.3d at 1554 (quoting *Keene*, 508 U.S. at 216). For this independent reason, the government's motion to dismiss should be denied.

#### 1. Section 1500 does not apply where the pending Complaints seek different relief.

It is well-settled that § 1500 does not apply where "a different type of relief is sought in the district court (equitable) from that sought in the Court of [Federal] Claims (money)." *Johns-Manville*, 855 F.2d at 1566. For example, in *Loveladies*, a plaintiff property owner sought complementary, but different, relief in two different courts according to the jurisdiction of each court to award that relief. In the Court of Federal Claims, the plaintiff sought money damages for denial of a wetlands development permit; by contrast, in the district court, the plaintiff filed suit to challenge, and seek the reversal of, the denial of the permit itself. The Federal Circuit held § 1500 did not apply because the plaintiff sought different relief in each court. *Loveladies*, 27 F.3d 1545; *see also Casman v. United States*, 135 Ct. Cl. 647 (1956) (equitable claim for reinstatement sought different relief from claim for backpay).

Like the plaintiff in *Loveladies*, Plaintiff-Beneficiary seeks strictly equitable relief in the District Court – a general accounting of all assets held in trust for the Tribe, and further equitable relief as appropriate – and strictly money damages in the CFC. (District Ct. Compl. Prayer ¶¶ 1-

6; CFC Compl. ¶¶ 30, 35, 40, 45, Prayer ¶ 2.) Indeed, Plaintiff-Beneficiary has tailored the relief it seeks in each court, as it must, to the relief that court has the jurisdictional power to award. *See Loveladies*, 27 F.3d at 1550 ("using differing relief as a characteristic for distinguishing claims was especially appropriate here because the Court of Federal Claims and its predecessors … could not grant the kinds of equitable relief the district courts could, even in cases over which they otherwise would have subject-matter jurisdiction"). There is jurisdiction in this Court over Plaintiff-Beneficiary's claims for money damages for past violations of the United States' trust obligations in the management of Indian property. *See Mitchell II*, 463 U.S. at 228. But, as this Court held in *Osage Tribe*, Plaintiff-Beneficiary cannot obtain declaratory relief here or compel the government to comply with its duty to provide a general accounting of all of Plaintiff-Beneficiary's trust assets. *See Osage Nation v. United States*, 57 Fed. Cl. 392, 393 n.2 (2003) ("this court does not have jurisdiction over claims for a pre-liability accounting or for declaratory relief"); *see also Klamath & Modoc Tribes & Yashookin Bank of Snake Indians v. United States*, 174 Ct. Cl. 483, at *3 (1966) ("It is fundamental that an action for accounting is an equitable claim and that courts of equity have original jurisdiction to compel an accounting. … Our general jurisdiction under the Tucker Act does not include actions in equity.").

Given the distinct relief sought in the two cases, application of § 1500 to bar Plaintiff-Beneficiary's present claims for money damages in this court would effectively force claimants to choose between requesting an equitable accounting in the District Court and obtaining money damages here. This is foreclosed by the narrow rule of construction announced in *Loveladies*. As the Federal Circuit recognized, it is neither good law nor sound policy to require plaintiffs to forgo their monetary claims in favor of other equitable remedies against the government. 27 F.3d at 1556. Therefore, "absent a clear expression of Congressional intent" this Court "ought

not extend the statute to allow the Government to foreclose non-duplicative suits, and to deny remedies the Constitution and statutes otherwise provide." *Id.*

**2. Plaintiff-Beneficiary does not seek the same relief in the two cases.**

Even in the face of this well-settled rule that Plaintiff-Beneficiary cannot obtain a comprehensive, general accounting of its trust assets in this Court, the government still contends that Plaintiff-Beneficiary "anticipates achieving the same result" here as the accounting sought in the District Court "by way of an evidentiary hearing, wherein this Court would essentially conduct an *accounting in aid of judgment*." (emphasis in original)). Although the vocabulary is similar, this Court's power to conduct a limited accounting to facilitate its calculation of an award of money damages is nothing like the general equitable accounting of its trust assets that Plaintiff-Beneficiary seeks in the District Court.

The government ignores the scope and nature of this Court's power to order an accounting in aid of its judgment. It is true that this Court may order the government to render a limited accounting "for the purpose of enabling the court [to calculate damages]." *Klamath & Modoc Tribes*, 174 Ct. Cl. 483, at *6. The scope of such an accounting, however, is extremely narrow – it is limited to the calculation of money damages. It is also derivative of, and inextricably tied to, a determination of liability for breach of a money-mandating duty. Therefore, it may be conducted only "after a trial on the issue of liability" and a showing that Plaintiff-Beneficiary is entitled to money damages in some, as yet, unidentified amount. *Id.*; *see also Cherokee Nation of Okla. v. United States*, 21 Cl. Ct. 565, 582 (1990) ("Until plaintiff establishes the liability of defendant, an accounting action takes the form of an independent equitable action beyond the jurisdiction of this court").

By contrast, the complete historical accounting sought in the District Court is far more comprehensive and exists irrespective of any showing of liability or entitlement to money damages. As trustee of lands, funds, and resources that are held in trust for Plaintiff-Beneficiary, the government, like any trustee, owes Plaintiff-Beneficiary a fiduciary duty to account for these assets at suitable intervals so that Plaintiff-Beneficiary can determine whether the government's trust duties are being performed. *See Cobell VI*, 240 F.3d at 1102; G. Bogert, et al., *The Law of Trusts & Trustees* § 963 (2d ed. 2006) ("The trustee … owes his beneficiary a duty to render at suitable intervals … a formal and detailed account of his receipts, disbursements, and property on hand, from which the beneficiary can learn whether the trustee has performed his trust and what the current status of the trust is."); 2A A. Scott & W. Fratcher, *The Law of Trusts* § 172 (4th ed. 1987) ("Not only must the trustee keep accounts, but he must render an accounting when called on to do so at reasonable times by the beneficiaries."); Indian Trust Management Reform Act of 1994, 25 U.S.C. § 4011(a) (2000) (reaffirming United States' fiduciary duty to provide tribal trust beneficiaries an accounting of "all funds held in trust by the United States for the benefit of an Indian tribe … which are deposited or invested pursuant to Section 162a of this title.").

Sitting in equity, the District Court has the power to compel the government to comply with its trust obligations by conducting a general accounting of all of Plaintiff-Beneficiary's trust assets. This is a broad and complete accounting that will require the government to produce a comprehensive, transaction-by-transaction report of all of the assets it holds in trust for Plaintiff-Beneficiary. *See Cobell VI*, 240 F.3d at 1103 ("It is black-letter trust law that '[a]n accounting necessarily requires a full disclosure and description of each item of property constituting the corpus of the trust at its inception'" (citation omitted)). Further, this duty is an inherent part of

the trust obligation that the trustee may be periodically ordered to perform without first demonstrating that the trustee has been negligent in its performance of other duties. *See* 6 Bogert, *The Law of Trusts & Trustees*, § 963; *Restatement (Second) of Agency* § 399, comment e ("In an action for an accounting, the agent has the burden of proving that he paid to the principal or otherwise properly disposed of the money or other thing to which he is proved to have received for the principal.").

Given the nature of this accounting, the law is well-settled that Plaintiff-Beneficiary's demand that the government perform this most basic of trust duties does not constitute a request for money damages, even if, as the government contends here, the accounting could provide a basis for future legal and equitable actions. That possibility does not, contrary to the government's argument, transform the District Court suit from one sounding in equity to one seeking money damages. *See Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) ("A plaintiff does not 'in essence' seek monetary relief … merely because he or she hints at some interest in a monetary reward …. Even when a monetary claim may be waiting on the sidelines, as long as the plaintiff's complaint only requests non-monetary relief that has 'considerable value' independent of any future potential for monetary relief ... we respect the plaintiff's choice of remedies and treat the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims"); *see also Tootle v. Sec'y of Navy*, 446 F.3d 167 (D.C. Cir. 2006). Instead, the principal value of the comprehensive accounting available in the District Court is informational. The accounting report itself must "contain sufficient information for the beneficiary readily to ascertain whether the trust has been faithfully carried out." *Cobell VI*, 240 F.3d at 1103 (citation omitted); G. Bogert, *The Law of Trusts & Trustees* § 963 ("In order to obtain an accounting it is not necessary for the beneficiary to allege

that there is any payment immediately due him under the trust or that the trustee in some way is in default."). This report will provide Plaintiff-Beneficiary with important information about its assets that will enable it to make a whole host of judgments about those assets that it otherwise would lack information to reach.

For example, the regulations governing the lease of trust property for business purposes provide for the right under certain circumstances to cancel a lease. *See* 25 C.F.R. § 162.619. A full accounting might alert Plaintiff-Beneficiary to the need to take such an action. Another example is that under the Indian Trust Management Reform Act of 1994, an Indian tribe may choose to withdraw some or all of its funds held in trust by the United States to manage those funds itself. *See* 25 U.S.C. § 4022. An equitable accounting will provide Plaintiff-Beneficiary with critical information about the current state of its trust assets that will enable it to determine whether it is prudent to exercise that right. An accounting might also reveal a delinquency in third party payments under a lease entitling Plaintiff-Beneficiary to special fees from that third party. 25 C.F.R. § 162.616. Or, upon discovery of a failure of a third party to make a receivables payment, Plaintiff-Beneficiary could bring an action against that third party to collect that payment. *See Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968). A full accounting will also reveal and detail all the encumbrances on Plaintiff-Beneficiary's trust assets, including rights-of-way and easements. An accurate and complete accounting of this information will aid Plaintiff-Beneficiary in managing its land by making Plaintiff-Beneficiary aware of any valid encumbrance. Moreover, it will also reveal any expired right-of-way granted to a third party that Plaintiff-Beneficiary either must renew or take action to correct. 25 C.F.R. § 162.616. Or an accounting might reveal a trespass against which the government has failed to take any

corrective action. These examples are merely illustrative and do not fully capture the wealth of information that a full and complete accounting will provide.

At the end of the day, the most the government can argue is that it is possible the accounting Plaintiff-Beneficiary seeks in the District Court may reveal, in addition to a great deal of other important information about its trust assets, breaches of trust that will someday lead to a separate claim for money damages against the United States in this Court. However, this possibility does not gainsay that the District Court Complaint seeks independent and valuable relief in its own right regardless of the entirely speculative prospect of a future suit in this Court for additional money damages. *Cf. Kidwell*, 56 F.3d at 284.

**3. The government's arguments to the contrary are without merit.**

The government nonetheless contends that dismissal is required under § 1500 because both complaints seek "overlapping" monetary and declaratory relief. (Def. Mot. to Dismiss at 9-11.) The government is incorrect in both respects.

*a. The government mischaracterizes what is required for "overlapping relief."*

The government emphasizes that § 1500 applies if there is "some overlap in the relief requested," relying for this proposition upon *Harbuck*, 378 F.3d at 1329 (quoting *Keene*, 508 U.S. at 212). In *Harbuck*, the plaintiff brought claims for sex discrimination under Title VII in the district court and under the Equal Pay Act in the Court of Federal Claims. Although the complaint filed in the CFC also sought other formulations of damages, § 1500 was "trigger[ed]" because one of the prayers for relief in the Court of Federal Claims was "identical to one of the prayers for relief in the first amended district court complaint." *Id.* at 1329. Specifically, both complaints sought "back wages in the amount of the difference between what she actually earned and what she would have earned at the GS-12 level from January 1990 until she is restored to her

proper and correct grade." *Harbuck*, 378 F.3d at 1327. Against this background, the Federal Circuit held that § 1500 barred the plaintiff's claim because she had asked for identical relief in both courts. *Id*. at 1329. Despite the inclusion of other and different requested relief in the two complaints, one of the plaintiff's requests was exactly overlapping. *Id*. ("The inclusion of other and different requested relief in the two complaints does not avoid the application of [§ 1500]."). In sum, it is clear that this case does not stand for the rule for which the government cites it; it did not hold that the two requests were overlapping merely because both complaints included requests for monetary relief. (*See* Def. Mot. to Dismiss at 5.) ("The relief must be merely the same in nature: monetary, injunctive, or declaratory. It is enough that there is some overlap in the relief requested.").

In contrast, even in cases involving claims that both seek monetary relief from the government in two different courts, but where both the measure and the amount of the relief sought were different, this Court has held that § 1500 did not bar such claims. Indeed, just last month this Court reaffirmed that "the inclusion of similar [monetary] relief in the two complaints does not always mandate the application of § 1500." *Cooke*, 2007 WL 1893177, at *5. In *Cooke*, the plaintiff alleged sex discrimination in her government employment and requested backpay for violation of the Equal Pay Act (EPA) in the district court and money damages in the Court of Federal Claims for retaliation in violation of the Fair Labor Standards Act (FLSA). This Court noted that the purpose of § 1500's "requirement of distinct relief" is to protect the government from having to defend two separate lawsuits based upon the same claim and from "having to pay twice for the same alleged wrong." *Id.* In that case, although the two claims sought monetary relief from the government, "the economic damages asserted for each claim [were] based upon distinct Government conduct with different economic consequences." *Id.*

Furthermore, the plaintiff's EPA and FLSA claims sought "distinct relief because the full amount of requested relief [could] be granted for each claim in a different form and measure, and thus there [was] no risk of subjecting the Government to double liability." *Id.* Therefore, § 1500 did not bar the plaintiff's claims. *See also OSI, Inc. v. United States*, 73 Fed. Cl. 39, 45 (2006) (finding that two claims were not the same when each sought different measures and amounts of monetary relief).

In this case, Plaintiff-Beneficiary does not seek money damages at all and thus the relief sought is not the same in nature. However, even assuming *arguendo* that there is some overlap in the nature of the relief prayed for, § 1500 still does not apply because the relief itself is not exactly the same and does not subject the government to a risk of double liability.

*b. The District Court and CFC Complaints do not contain overlapping claims for monetary relief because relief in the form of equitable restitution and disgorgement is not the same as money damages.*

The government contends that this action must be dismissed under § 1500 because there was already a claim pending for monetary relief in the District Court at the time Plaintiff-Beneficiary filed its CFC Complaint. Specifically, the government points to Plaintiff-Beneficiary's request that the District Court "correct the balances of the Nation's trust fund accounts to reflect accurate balances" through the remedies of equitable restitution and disgorgement. (*See* District Ct. Compl. ¶¶ 1, 43; Prayer ¶ 6; Def. Mot. to Dismiss at 9-10.)

The government mischaracterizes the scope of the relief sought in the District Court. ***Plaintiff-Beneficiary does not seek to recover any money damages in the District Court.*** Indeed, it is fully aware that the District Court would not have jurisdiction to award such relief. (*See* Def. Mot. to Dismiss at 10 n.1.) Simply put, in the District Court, Plaintiff-Beneficiary is *not* seeking compensation for losses suffered as a result of the government's failure to manage

the trust *corpus*. Nor does it seek money damages for the government's failure prudently to invest its trust funds or funds derived from the government's sale or lease of trust assets. Nor does Plaintiff-Beneficiary seek damages in the District Court for the government's failure to charge third parties fair market value for the lease of tribal assets or land or the failure to seek the highest and best use of this property. Plaintiff-Beneficiary's ***only*** pending claims for money damages are in this Court.

The government is factually correct that, to the extent the accounting in the District Court demonstrates errors in the account balances, Plaintiff-Beneficiary does seek a correction and restatement of the accounts. (District Ct. Compl. ¶¶ 1, 43; Prayer ¶ 6.) But the government is legally incorrect that this sort of equitable relief is the same as money damages. *See Bowen v. Massachusetts*, 487 U.S. at 893 ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'"). As the Supreme Court recognized in *Bowen*, case law has "long recognized the distinction between an action at law for damages – which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation – and an equitable action for specific relief – which may include an order providing for … 'the recovery of specific . . . *monies*.'" *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949)). In other words, an action at law for "money damages" is "intended to provide a victim with monetary compensation for an injury to his person, property or reputation." *Bowen v. Massachusetts*, 487 U.S. at 893. In contrast, an equitable action for specific relief, including "'the recovery of specific property *or monies*,'" is not one for damages because it does not compensate for loss. *Id.* (citation omitted). Rather, specific remedies "'are not substitute

remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895 (quoting D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)).

The government's legal argument thus flies in the face of a long and consistent line of case law. *See, e.g.*, *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed. Cir. 1993) (claim seeking return of money unlawfully withheld from airlines involved money to which they were legally entitled, and therefore order that the funds "be paid over to their rightful owner [was] in no way an order for the payment of 'money damages'"); *United States v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000) (action to recover value of currency improperly forfeited was not money damages because plaintiff sought "restitution of 'the very thing' to which he claim[ed] an entitlement, not damages in substitution for a loss") (citation omitted); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 747 (D.C. Cir. 1995) (when an action in restitution seeks a payment of money "because that sum of money was itself the thing unjustly taken[,] …. the payment of money from defendant to plaintiff represents a kind of specific relief rather than compensatory damages. Whatever restitution may encompass, … we clearly may not collapse it into the broader notion of 'compensation.'" (citation omitted)); *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) ("Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating [the law].").

Therefore, any correction or restatement warranted in the exercise of the District Court's equitable jurisdiction will not be an award of money damages. Pursuant to its broad equitable authority to provide full and effective relief upon completion of the accounting, the District Court will have the authority to order correction and restatement of Plaintiff-Beneficiary's account balances through the remedies of equitable restitution and disgorgement. *See, e.g.*, *Cobell v. Babbitt (Cobell I)*, 30 F. Supp. 2d 24, 41 (D.D.C. 1998); *Rainbolt v. Johnson*, 669 F.2d

767 (D.C. Cir. 1981) ("Once the accounting is completed, the District Court shall provide such additional relief for plaintiff-appellant as may be appropriate" (citing G. Bogert, *The Law of Trusts & Trustees* § 962)). Equitable restitution in this case would not constitute money damages because it would not compensate Plaintiff-Beneficiary for any loss, mismanagement, or breach of fiduciary duty; that is the purpose of the action in this Court. Instead, equitable restitution would simply return specific monies to which the government's own account records, when accurately stated, indicate Plaintiff-Beneficiary is entitled. Such equitable relief is thus not a request for money damages. *See* D. Dobbs, *Law of Remedies* § 4.1(2), at 557 (1993) ("[*R*]*estitution* is not *damages*; restitution is a restoration required to prevent unjust enrichment.") (emphases in original)); *Porter v. Warner Holding Co.,* 328 U.S. 395, 402 (1946) ("Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from … damages"); *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 28 & n.20 (D.D.C. 1999) (same).

In other cases, the government has repeatedly raised the same argument that a request for an accounting is really a veiled attempt to maintain money damages in the district court, and other courts have repeatedly rejected it. *See, e.g., Osage Tribe of Indians of Okla. v. United States*, No. 04-0283, 2005 WL 578171, at *1-2 (D.D.C. Mar. 9, 2005) (noting the District Court of the District of Columbia and D.C. Circuit share the "dubious distinction of having heard [and rejected] these same arguments on multiple occasions"). In *Osage*, the government argued that the district court lacked jurisdiction to order an equitable accounting because the "true nature" of the Tribe's demand was "one for money damages, or at a minimum, a step precedent to seeking money damages." *Osage v. United States*, D.D.C. Case No. 1:04CV00283, Defendants' Mot. to Transfer Case at 17, June 14, 2004. The government also argued that the Tribe had an adequate remedy in the CFC because it had the power to order an accounting in aid of a money judgment.

The District Court for the District of Columbia held that the Osage Tribe's ongoing case seeking money damages in the Court of Federal Claims neither deprived the district court of jurisdiction over the Tribe's request for an accounting nor warranted a transfer to this Court. *Id.*

The *Cobell* litigation produced the same result. Relying upon the Supreme Court's decision in *Bowen*, the district court concluded that the *Cobell* plaintiffs' claim for an accounting was distinct from a claim for money damages. *Cobell I*, 30 F. Supp. 2d at 41 (quoting *Bowen*, 487 U.S. at 893). The D.C. Circuit expressly affirmed this distinction, recognizing that the accounting and other claims sought in *Cobell* were "specific relief other than money damages." *Cobell VI*, 240 F.3d at 1094-95.

Therefore, this Court should hold that § 1500 does not preclude jurisdiction on the theory that Plaintiff-Beneficiary's request for restatement and correction of its accounts in the District Court does not overlap with its claims for money damages in this Court.

*c. The District Court and CFC Complaints do not contain overlapping claims for declaratory relief.*

The government also contends that the relief Plaintiff-Beneficiary seeks here overlaps with the relief sought in the District Court because the CFC Complaint requests a "determination that the Defendant is liable to the Nation in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty." (*See* CFC Compl., Prayer ¶ 1.) The government argues this "determination" is a form of relief and, more specifically, that it is "the equivalent of the declaration that Plaintiff seeks in the District Court." (Def. Mot. to Dismiss at 10.) The government's arguments are incorrect.

First, the government misinterprets the request in paragraph 1 of the Prayer for Relief of the CFC Complaint. The government erroneously concludes it is a request for "a liability determination from this Court." (*See* Def. Mot. to Dismiss at 11.) Although the Prayer for

Relief does request a determination that the United States is "liable . . . ***in damages***" for its breaches of fiduciary duty, *see* CFC Compl., Prayer ¶ 1 (emphasis added), this is not a request for a declaration that the Government has breached its duties. Read in the proper context, it is a prayer for this Court to determine that the specific trust duties at issue here are "money-mandating" duties and that the government is liable "in damages" for their breach. As this Court recognized in *Mitchell II*,

> Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.

463 U.S. at 216-17 (citations and internal quotation marks omitted). Therefore, to prevail in this Court and to establish that this Court even has jurisdiction, it is necessary first for this Court to determine that the trust duties allegedly breached violate money-mandating laws and therefore give rise to liability in damages. Of course, Plaintiff-Beneficiary's action for an equitable accounting in the District Court makes no such request because such a determination is not a necessary prerequisite to that court's jurisdiction. Therefore, there is no overlapping request for relief in the two courts.

Furthermore, even reading the request as the government does – as one for a simple determination of liability – such a determination is not a form of ***relief***. Every claim for relief inherently requires a determination of liability, and liability always has elements that must be determined. If the government's argument were carried to its logical conclusion, then every claim for relief would also implicitly include requests for declaratory relief on each of the elements of that claim. That is legally nonsensical.

The Federal Circuit rejected that same argument in *Loveladies*. There, the government also compared the complaints filed in each court and noted that each asked the court expressly "to 'declare' certain conclusions." *Loveladies*, 27 F.3d at 1553. In the plaintiff's district court claim for reversal of a denied wetlands permit, it requested relief including a declaration "that the action of the defendant in denying the permit application of plaintiffs constitutes a taking of property in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution." *Id.* The plaintiff sought the same declaration in the Court of Federal Claims. *See id.* ("The prayer again … includes a request for relief that the court declare that the action of the defendant in denying the permit application of plaintiffs constitutes a taking of property in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution"). The Federal Circuit rejected the argument that this constituted an overlapping request for relief. The court emphasized that despite the same request for a declaration in both courts, the prayer in the Court of Claims complaint contained an express request for damages, but the district court complaint requested a mandatory injunction. *Id.* In either case, full relief could have been granted without either court "declaring" anything. Therefore, the "use of the term 'declaring' in the prayers for relief was clearly intended to convey a request different from a formal declaration under the Declaratory Judgment Act." *Id.*

The same is true here. Although Plaintiff-Beneficiary does seek a formal declaration in the District Court construing "the trust obligations" and "fiduciary duties" of the defendants to the Nation related to the government's duty to account, and directing the defendants to comply with those duties in the future, *see* District Ct. Compl. Prayer ¶¶ 1,4,5, no declaratory relief is requested from this Court. Plaintiff-Beneficiary seeks only money damages here – and this can be granted without the Court providing any declaration at all. The fact that this Court must make

antecedent determinations regarding liability in the course of awarding money damages does not mean the relief itself is overlapping. Therefore, as in *Loveladies*, Plaintiff-Beneficiary does not seek overlapping declaratory relief.

Finally, entirely beyond the two points above, the government's premise is simply wrong that there is actual overlap between the determinations of liability this Court will make in order to award money damages and the determinations of liability the District Court will make or the declaratory relief it will award in order to compel the government to comply with its duty to account. As discussed above, each claim seeks to vindicate a different trust duty based upon different operative facts; therefore, determinations of liability – *i.e.*, that the government has breached those trust duties – will also be different in each court.

The District Court suit seeks an equitable accounting and other equitable relief related to the government's failure to fulfill its duty to account. Unlike the CFC Complaint, it does not ask for a declaration listing specific breaches, at various times in the past, of the government's money-mandating duties. Instead, the only declarations or determinations sought in the District Court are related to the government's failure "from the inception of the trust to the present" to carry out its duty to provide Plaintiff-Beneficiary with an equitable accounting of its trust assets. *See* District Ct. Compl. ¶ 35. To the extent the District Court Complaint includes allegations that defendants have breached other fiduciary duties in addition to the duty to account, *see id.* at ¶¶ 38-39, those involve subsidiary duties that are closely connected to the government's failure to provide an equitable accounting by failing to fulfill obligations that would enable such an accounting to take place. *Cf. Cobell VI*, 240 F.3d at 1105 ("The government's broad duty to provide a complete historical accounting … necessarily imposes substantial subsidiary duties on those government officials with responsibility for ensuring that an accounting can and will take

place."); *see also id.* (listing such additional obligations including obligation to maintain complete and accurate records, to recover missing records where possible, and to develop plans and procedures sufficient to ensure that all aspects of the accounting process are carried out). But a declaration that the government has breached these subsidiary duties, as part of a ruling that it has failed its overarching duty to account, is not the same as the liability determinations to be made in this Court as part of an award of money damages, *e.g.*, that the government failed to maximize by prudent investment the income on a specific sum of money held in trust. (*See* CFC Compl. ¶ 44.)

The government asserts that the scope of the District Court Complaint is broader than an equitable accounting and extends to all past breaches of the government's fiduciary obligations to invest and manage trust assets. (*See* Def. Mot. to Dismiss at 10-11.) In support, it points to allegations in the District Court Complaint regarding the government's failure "to use reasonable skill and care to invest and deposit trust funds" in a way that maximizes their productivity or failure to ensure these assets are "used for their highest and best use." (*See* District Ct. Compl. ¶¶ 4, 20.) As explained above, however, *see supra* pp. 12-13, these allegations are merely relevant background for Plaintiff-Beneficiary's demand for a full accounting in the District Court because these repeated breaches make clear the need for the government to account for all of Plaintiff-Beneficiary's trust assets. (*See* District Ct. Compl. ¶ 21) ("Due to these and other breaches of the fiduciary duties owed by the United States, the Nation does not know, and has no way of ascertaining, the trust state of its trust assets."). Plaintiff-Beneficiary did not include these allegations in the District Court Complaint because they are operative facts necessary to the equitable accounting claim presented in that court or because it seeks to have that court declare specific breaches of those duties in the past that entitle Plaintiff-Beneficiary to recovery in

money damages; rather, they simply are background facts in that case. By contrast, they are necessary operative facts in – and only in – the case in this Court for the breaches of trust for which Plaintiff-Beneficiary seeks money damages here.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss Plaintiff-Beneficiary's Complaint pursuant to 28 U.S.C. § 1500.

This the 11th day of July, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Tohono O'Odham Nation

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE TOHONO O'ODHAM NATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 06-944L<br>Judge Eric C. Bruggink<br><br>**Electronically filed**: 7/11/07 |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Brief In Response to Defendant's Motion to Dismiss was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Kevin J. Larsen, Esq.
United States Department of Justice
Environment Division, Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

This 11th day of July, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
**Kilpatrick Stockton LLP**
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
The Tohono O'odham Nation